**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 20-cv-00457-CMA-KMT

SASHA CRONICK,

  Plaintiff,

v.

THE CITY OF COLORADO SPRINGS,
CHRISTOPHER PRYOR,
ROBERT MCCAFFERTY, and
MICHAEL INAZU,

  Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS (Doc. # 48)**

---

This matter is before the Court on Defendants' Motion to Dismiss First Amended Complaint and Jury Demand, submitted by the City of Colorado Springs, Christopher Pryor, Robert McCafferty, and Michael Inazu. (Doc. # 48.) For the following reasons, the Motion is granted in part and denied in part.

## I.  <u>BACKGROUND</u>

### A.  FACTUAL BACKGROUND

The following facts are taken from Plaintiff Sasha Cronick's Amended Complaint (Doc. # 47) and are assumed to be true for purposes of reviewing the Motion to Dismiss (Doc. # 48). *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

On the morning of December 12, 2018, Plaintiff was leaving her home in
Colorado Springs to take her husband to work. (Doc. # 47 at ¶ 8.) At that time, Plaintiff
was temporarily living at a motel that was occupied by "many illicit drug users who
would come and go at all hours of the day and night." (*Id.* at ¶¶ 8, 10.) As Plaintiff and
her husband were leaving the motel, a neighbor shouted to them that her boyfriend was
overdosing on drugs and not breathing. (*Id.* at ¶ 11.) Plaintiff "darted across the hotel
complex parking lot" to help, called 911, and coached her neighbor through the steps of
CPR. (*Id.* at ¶¶ 12, 14.) Plaintiff stayed on the phone with the 911 operator, and
eventually the man began to breathe again. (*Id.* at ¶¶ 15, 16.) Plaintiff also recorded the
events on her cell phone. (*Id.* at ¶¶ 13, 18.)

Paramedics arrived and began rendering aid to the man, and police officers also
responded to the scene. (*Id.* at ¶ 17.) Plaintiff remained off to the side of the scene with
her cell phone recording. (*Id.* at ¶ 18.) She alleges that she was not blocking either the
paramedics or the officers from doing their jobs, and no officer or paramedic asked her
to move out of the way. (*Id.*)

Defendant Officer Pryor arrived on scene and immediately asked Plaintiff for her
name, date of birth, and a description of what happened. (*Id.* at ¶¶ 19, 20.) Plaintiff
states that she responded to his inquiry and provided the requested information. (*Id.* at
¶ 20.) Defendant Pryor then asked Plaintiff for the room number in which she was
staying. (*Id.* at ¶ 21.) Plaintiff states that she responded "in a calm and reasoned tone"
that she was uncomfortable answering that question, and Defendant Pryor "evinced
clear frustration." (*Id.*) Defendant Pryor then commanded her to leave while

simultaneously attempting to grab her by the arm. (*Id.*) Plaintiff immediately pulled away and loudly told Defendant Pryor not to put his hands on her. (*Id.*)

Plaintiff alleges that she then walked away, and Defendant Pryor followed her to the middle of the motel parking lot. (*Id.* at ¶ 22.) Defendant Officer McCafferty also approached her in the middle of the parking lot. (*Id.* at ¶ 23.) Plaintiff states that she was located well outside the range of the scene and was not obstructing the investigation or the paramedics rendering aid. (*Id.*) She alleges that both officers "continued to confront, pursue and engage with [her] without probable cause or reasonable suspicion to believe she had committed any crime." (*Id.*)

Plaintiff asked for Pryor and McCafferty's supervisor, and the officers responded by grabbing Plaintiff, throwing her to her knees, and then pushing her face down onto the concrete before handcuffing her, causing her extreme pain. (*Id.* at ¶ 24.) While she was on the ground, she was forcibly searched by the officers. (*Id.* at ¶ 25.) She was then placed in the back of a police car and interrogated by Defendant Pryor. (*Id.* at ¶ 26.) Eventually, Plaintiff was formally arrested. (*Id.*) She alleges that at no time did the officers have probable cause or reasonable suspicion to believe that she had committed any violation of the law. (*Id.* at ¶ 24.)

Defendant Officer Inazu arrived on the scene and began investigating what had happened. (*Id.* at ¶ 30.) Plaintiff alleges that Defendant Inazu viewed the body camera footage, which "clearly showed" the officers "assaulting, detaining, and arresting [Plaintiff] without probable cause or reasonable suspicion," and interviewed Plaintiff and her husband. (*Id.* at ¶¶ 31, 32.) Plaintiff alleges that Defendant Inazu knew Plaintiff had

not committed a crime but nevertheless elected to cite and summons Plaintiff for failure to desist or disperse. (*Id.* at ¶ 33.)

Plaintiff pleaded not guilty to the charges of failure to desist or disperse and was acquitted by a jury of all charges. (*Id.* at ¶¶ 34, 36.)

**B.   PROCEDURAL BACKGROUND**

Plaintiff commenced this action on February 20, 2020. (Doc. # 1.) Defendants filed their first Motion to Dismiss for Failure to State a Claim (Doc. # 17) on May 19, 2020, which the Court referred to United States Magistrate Judge Kathleen M. Tafoya. On February 19, 2021, Judge Tafoya entered her Recommendation of United States Magistrate Judge (Doc. # 35), wherein she recommended that the Court grant in part and deny in part Defendants' First Motion to Dismiss.

Plaintiff filed a Motion for Leave to File Amended Complaint (Doc. # 39) on March 12, 2021, in order to address several of the issues that Judge Tafoya raised in her Recommendation. Defendants filed a response in opposition. (Doc. # 42.) On March 26, 2021, this Court issued an Order (Doc. # 45) granting Plaintiff's Opposed Motion for Leave to File a First Amended Complaint and denying as moot Defendants' First Motion to Dismiss (Doc. # 17). Accordingly, the Court determined that Judge Tafoya's Recommendation (Doc. # 35) was also moot.

Plaintiff filed her Amended Complaint on April 2, 2021. (Doc. # 47.) She alleges violations of her rights under the Fourth Amendment and asserts (1) an excessive force claim against the City of Colorado Springs and Defendants Pryor and McCafferty in their individual capacities; (2) an unlawful seizure/unlawful search/false arrest claim against

4

all Defendants; and (3) a malicious prosecution claim against all Defendants. (*Id.* at 17–22.)

Defendants filed the instant Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on April 16, 2021. (Doc. # 48.) Plaintiff filed her Response (Doc. # 51), and Defendants followed with their Reply (Doc. # 53.)

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d

1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and brackets omitted).

## III.   <u>DISCUSSION</u>

### A.   CONSIDERATION OF MATERIAL OUTSIDE THE PLEADINGS

Generally, a court considers only the contents of the complaint when ruling on a Rule 12(b)(6) motion. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). "If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (quoting Fed. R. Civ. P. 12(d)). A court may, however, consider documents that are attached to the complaint or incorporated by reference into the complaint without converting a 12(b)(6) motion to a motion for summary judgment. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Id.*

Defendants have submitted two video recordings from Defendant Pryor's and Defendant McCafferty's body worn cameras ("BWCs") alongside their Motion to Dismiss. *See* (Doc. # 48 at 4.) Defendants argue that the Court should consider the BWC footage without converting the Motion to one for summary judgment because (1)

the footage is indisputably authentic; (2) Plaintiff references the footage in her Amended Complaint; (3) the BWC footage is "central" to Plaintiff's claims for relief; and (4) the BWC footage is a dispositive document that contradicts Plaintiff's allegations. (*Id.* at 4–5.) Plaintiff objects that the Court cannot consider the BWC footage because it is only minimally referenced in her Amended Complaint and the footage is not central to any of her claims. (Doc. # 51 at 3–6.)

The Court finds that Plaintiff's Amended Complaint does refer to the BWC footage as support for Plaintiff's claims, particularly against Defendant Officer Inazu.[1] Moreover, neither side appears to challenge the authenticity of BWC footage. *See Scott v. Harris*, 550 U.S. 372, 379 (2007) (considering video evidence for which there were no allegations or indications of doctoring or tampering). However, in focusing on the BWC footage, Defendants appear to make arguments more appropriate for the disputed evidence standard under Federal Rule of Civil Procedure 56, as opposed to the plausibility pleading standard that governs Rule 12(b)(6) motions to dismiss. *See Kennedy v. Taylor*, No. 21-cv-0901-WJM-KMT, 2021 WL 6050279, at *3 (D. Colo. Dec. 21, 2021). Accordingly, the Court will consider the BWC evidence only to the extent that it "clearly contradicts" the allegations in the Amended Complaint. *Id.*; *See Estate of Ronquillo v. City & Cnty. of Denver*, No. 16-cv-01664-CMA-KMT, 2016 WL 10843787,

---

[1] Plaintiff alleges that when Defendant Inazu arrived on the scene, he "viewed the body camera footage which clearly showed Defendants Pryor and McCafferty assaulting, detaining, and arresting Ms. Cronick without probable cause or reasonable suspicion." (Doc. # 47 at ¶ 31.) Plaintiff also alleges that Defendant Inazu interviewed Plaintiff and her husband, "whose versions of events were consistent with what was on the body camera footage." (*Id.* at ¶ 32.) Finally, Plaintiff alleges that "[d]espite knowing that Ms. Cronick had committed no crime, having personally seen the video, Defendant Inazu elected to cite and summons Ms. Cronick for failure to desist or disperse." (*Id.* at ¶ 33.)

at *2 (D. Colo. Nov. 17, 2016) (viewing video evidence in the light most favorable to

Plaintiff, except where it "blatantly contradicts" Plaintiff's version of events); *see also*

*Pittman v. City of Aurora*, No. 19-cv-01947-PAB-NRN, 2020 WL 6586659, at *3–4 (D.

Colo. Oct. 23, 2020), *report and recommendation adopted*, No. 19-cv-01947-PAB-NRN,

2020 WL 6585841 (D. Colo. Nov. 10, 2020) (reviewing video evidence in ruling on a

motion to dismiss over plaintiff's objection because complaint referred to the footage as

support for plaintiff's claims); *Strepka v. Thompson*, No. 18-cv-02557-RBJ-STV, 2019

WL 5790710, at *1 n.1 (D. Colo. July 24, 2019), *report and recommendation adopted*,

18-cv-02557-RBJ-STV, 2019 WL 4316523 (D. Colo. Sept. 12, 2019) (reviewing video

evidence provided by defendants in ruling on a motion to dismiss where the footage

was referenced in the complaint).

**B.     UNLAWFUL SEIZURE, UNLAWFUL SEARCH, FALSE ARREST**

The Fourth Amendment protects the right to be free from unreasonable searches

and seizures. U.S. Const. amend. IV. To state a claim under the Fourth Amendment, a

plaintiff must show that a seizure occurred and that the seizure was unreasonable.

*Childress v. City of Arapahoe*, 210 F.3d 1154, 1156 (10th Cir. 2000). The

reasonableness of a search or seizure depends upon whether, objectively, the

challenged action was justified under the circumstances. *Ashcroft v. al-Kidd*, 563 U.S.

731, 736 (2011). A warrantless arrest by a law enforcement officer violates the Fourth

Amendment unless the arrest was supported by probable cause. *United States v.*

*Edwards*, 632 F.3d 633, 639 (10th Cir. 2001). In evaluating the existence of probable

cause, courts consider whether the "facts and circumstances within the officers'

knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008) (quoting *Edwards*, 632 F.3d at 639).

      1.    <u>Claims Against Defendants Pryor and McCafferty</u>

Defendants argue that the allegations in the Amended Complaint and the BWC footage show that there was probable cause to arrest Plaintiff with failure to desist or disperse pursuant to § 9.2.103 of the Colorado Springs Code of Ordinances. That section provides:

> It is unlawful for any person to intentionally, knowingly or recklessly fail or refuse to obey an order which:
>
> > A.  Is made by a peace officer while in the discharge or apparent discharge of the officer's duties; and
> > B.  Directs that person . . . to desist from conduct or disperse from an area; and
> > C.  Is given at a time when that person individually or with others is participating in a course of conduct or is present in an area where the conduct or presence creates, maintains, or aggravates an immediate substantial danger of damage or injury to persons or property or substantially obstructs the performance of any governmental function.

Colo. Springs Code of Ordinances, § 9.2.103.

First, Defendants argue that Plaintiff "ignored Pryor's multiple orders that she leave the crime scene." (Doc. # 48 at 6–7.) However, the allegations in the Amended Complaint show that Defendant Pryor "commanded her to leave while simultaneously attempting to grab Ms. Cronick by the arm." (Doc. # 47 at ¶ 21.) Plaintiff "immediately pulled away," "loudly told Defendant Pryor not to put his hands on her," and then

"walked away." (*Id.* at ¶¶ 21–22.) The allegations in Plaintiff's Amended Complaint, therefore, show that Plaintiff complied with Defendant Pryor's order to leave.

Next, Defendants argue that Plaintiff's "disruptive outburst threatened the provision of a dying individual's medical care and hampered the investigation—requiring two officers to leave their duties to deal with her antics—of an active crime scene." (Doc. # 48 at 7.) The paragraphs of the Amended Complaint cited by Defendants do not support their argument. Rather, the allegations show that Plaintiff "loudly" told Defendant Pryor not to put his hands on her when he grabbed her arm, and that she then walked away. (Doc. # 47 at ¶ 21.) Plaintiff alleges after she walked away, the officers "pursued her to the middle of the motel parking lot," where she was "well outside the range of the scene, not obstructing the investigation or the rending of aid." (*Id.* at ¶¶ 22–23.) Thus, the facts alleged by Plaintiff do not establish that she disrupted the paramedics or the investigation; on the contrary, they show that she complied with Defendant Pryor's order to walk away and did not obstruct the provision of medical care or the investigation. The Court has also reviewed the video evidence and determined that it does not "clearly contradict" these allegations. *See Myers v. Brewer*, 773 Fed. Appx. 1032, 1036 (10th Cir. 2019) (unpublished). Accordingly, the Court finds that Plaintiff has sufficiently alleged that Defendants Pryor and McCafferty lacked probable cause. Therefore, Plaintiff has adequately stated a claim for unlawful seizure/unlawful search/false arrest under the Fourth Amendment.

2.    Claim against Defendant Inazu

Defendants argue that Plaintiff has failed to plead adequate facts alleging Defendant Inazu personally participated in her alleged unlawful seizure, unlawful search, or false arrest. (Doc. # 48 at 3.) To hold a government official individually liable under § 1983, the plaintiff must establish that the defendant had personal involvement in the alleged constitutional violation. *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). In other words, there must be an affirmative link between the constitutional deprivation and the defendant's personal participation. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

The Court agrees with Defendants that the allegations in Plaintiff's Amended Complaint fail to support an "affirmative link" between the alleged unlawful seizure/unlawful search/false arrest and Defendant Inazu's personal participation. Plaintiff alleges that Defendant Inazu arrived on the scene **after** she was handcuffed, searched, and placed in the back of a police cruiser. *See* (Doc. # 47 at ¶¶ 24–26, 30.) Thus, the allegations demonstrate that Defendant Inazu was not even present for the alleged search, seizure, and arrest. Accordingly, the Court finds that Plaintiff's second claim for relief against Defendant Inazu should be dismissed for failure to allege personal participation.

## C.   EXCESSIVE FORCE

Claims of excessive force are analyzed under the Fourth Amendment's "reasonableness" standard. *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014). Determining the objective reasonableness of a seizure "requires a careful balancing of the nature

and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal quotation marks omitted). This balancing requires analyzing the totality of the circumstances, including (1) the alleged crime's severity, (2) the degree of potential threat that the suspect poses to the officers' and others' safety, and (3) the suspect's efforts to resist or evade arrest. *Id.* The court conducts this analysis from the perspective of a reasonable officer on the scene, rather than with the vision of 20/20 hindsight, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances. *Plumhoff*, 572 U.S. at 775.

Defendants argue that Plaintiff has failed to state a claim of excessive force because the allegations show that the amount of force used in this case was not objectively unreasonable as a matter of law. (Doc. # 48 at 7–8.) As to the first *Graham* factor, Defendants argue that this was a minor offense and that Plaintiff "was handcuffed, nothing more." (*Id.* at 8.) However, the allegations in the Amended Complaint show that Defendants Pryor and McCafferty "responded by grabbing Ms. Cronick, throwing her to her knees and then pushing her face down onto the concrete before handcuffing her causing her extensive pain." (Doc. # 47 at ¶ 24.) The BWC footage does not "clearly contradict" these allegations. *See Myers*, 773 Fed. Appx. at 1036. Accordingly, the Court finds that the first *Graham* factor weighs in Plaintiff's favor.

Next, Defendants argue that the second *Graham* factor weighs in their favor because the officers reasonably believed that Plaintiff posed a threat "when she refused to desist or disperse" and "was overtly belligerent and uncooperative." (Doc. # 48 at 8.)

They cite to *Lord v. Hall*, 520 Fed. App'x 687, 692 (10th Cir. 2013), to argue that an officer can be reasonably put on guard that a person who does not adhere to commands from law enforcement may be a safety concern. The Court finds that Defendants' arguments contradict the allegations in the Amended Complaint that Plaintiff complied with Defendant Pryor's order to leave when she "walked away." (Doc. # 47 at ¶¶ 21–22.) The second *Graham* factor weighs in Plaintiff's favor.

Finally, Defendants argue that the BWC footage shows that Plaintiff resisted arrest. (Doc. # 48 at 8.) In her Amended Complaint, Plaintiff alleges that at no time did she "act physically aggressive towards officers, assault any officer, resist arrest, or engage in any conduct which would have justified Defendants Pryor or McCafferty's use of force against her or her arrest." (Doc. # 47 at ¶ 28.) The BWC footage does not blatantly contradict Plaintiff's allegations. Therefore, the Court finds that the third *Graham* factor weighs in Plaintiff's favor. Accordingly, Plaintiff has plausibly pled an excessive force claim.

## D.   MALICIOUS PROSECUTION

The Tenth Circuit recognizes a malicious prosecution claim under both the Fourth and Fourteenth Amendments. *See, e.g.*, *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008). Plaintiff brings her malicious prosecution claim under the Fourth Amendment. To assert a § 1983 claim for malicious prosecution, a plaintiff must establish (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant

acted with malice; and (5) the plaintiff sustained damages. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

As an initial matter, the Court finds that Plaintiff plausibly alleged the first, second, and fifth elements of her malicious prosecution claim. In her Amended Complaint, Plaintiff sufficiently alleges that Defendants Pryor and McCafferty effectuated her arrest, that Defendant Inazu "elected to cite and summons" her for failure to desist or disperse, and that all three Defendants participated in the continued criminal prosecution of Plaintiff. (Doc. # 47 at ¶¶ 24, 26, 33, 93–96.) Further, Plaintiff alleges that she was acquitted by a jury of her peers of the charges of failure to desist and disperse and that she suffered damages. *See* (*id.* at ¶¶ 33–36.)

Defendants argue that the Amended Complaint fails to allege the third and fourth elements of a malicious prosecution claim. (Doc. # 48 at 9–10). As to the third factor, Defendants reiterate their argument that the allegations in Plaintiff's Amended Complaint and the BWC footage support a finding of probable cause. For reasons already stated, the Court finds that, viewing the allegations and the BWC footage in the light most favorable to Plaintiff, Plaintiff has sufficiently alleged that Defendants lacked probable cause to effectuate her seizure and arrest. As such, the Court finds that the facts in Plaintiff's Amended Complaint are sufficient to support a finding that no probable cause existed for purposes of her malicious prosecution claim.

The fourth element of a malicious prosecution claim, malice, may be inferred from a lack of probable cause. *See Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014) ("Malice may be inferred if a defendant causes the prosecution without

arguable probable cause."); *Chavez-Torres v. City of Greeley*, No. 14-cv-01187-RBJ, 2015 WL 1850648, at *4 (D. Colo. Apr. 21, 2015) ("Because the Court is satisfied that plaintiff's allegations are sufficient to find a lack of probable cause, the plaintiff has pled sufficient facts to plausibly find that [Defendant] was motivated by malice."). The Court finds that Plaintiff has adequately stated a claim for malicious prosecution.

## E.    QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials from individual liability in the course of performing their duties so long as their conduct does not violate clearly established constitutional or statutory rights. *Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). To overcome the defense of qualified immunity, a plaintiff must present enough facts in the complaint, taken as true, to show (1) a violation of a constitutional or statutory right and (2) that the right was clearly established when the alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). The bar is higher for Defendants because they assert a qualified immunity defense in a Rule 12(b)(6) motion instead of a Rule 56 motion. *See Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) ("Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment."). In the 12(b)(6) context, a district court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation marks omitted).

Defendants argue that Plaintiff failed to establish a violation of her constitutional rights because "the mere act of handcuffing an individual who failed to desist or disperse pursuant to orders from the very officer that arrested her is not unreasonable." (Doc. # 48 at 11.) Further, Defendants assert that "[t]here is no relevant case law that clearly establishes that a non-compliant, belligerent, and unsubdued misdemeanant in a dangerous area cannot be merely handcuffed for failure to desist or disperse." (*Id.*) In so arguing, Defendants directly contradict the facts alleged in Plaintiff's Amended Complaint. The Court sees no support in the Amended Complaint for Defendants' assertions that Plaintiff was non-compliant, that she failed to desist or disperse, or that she was "merely handcuffed." Conversely, the allegations show that Plaintiff complied with directions, "walked away," and was thrown to her knees with her face pushed down onto the concrete before being handcuffed. (Doc. # 47 at ¶¶ 21–24.)

The Court finds that Plaintiff adequately alleged violations of her clearly established constitutional rights. "It is clearly established that an officer uses excessive force when he executes a forceful takedown of a subject who at most was a misdemeanant, but otherwise posed no threat and did not resist arrest or flee." *Myers*, 773 Fed. App'x at 1038. Aside from relying on assertions unsupported by the factual allegations in the Amended Complaint, Defendants do not further develop their qualified immunity argument. The Court, therefore, finds that Defendants have not established that they are entitled to qualified immunity at this stage.

F.      MUNICIPAL LIABILITY

To state a claim for municipal liability under § 1983, a plaintiff must allege facts

which, if true, would establish "(1) that a municipal employee committed a constitutional

violation, and (2) that a municipal policy or custom was the moving force behind the

constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313,

1316 (10th Cir. 1998) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694

(1978)). A municipal policy or custom can take the form of:

> (1) a formal regulation or policy statement; (2) an informal custom
> amoun[ting] to a widespread practice that, although not authorized by
> written law or express municipal policy, is so permanent and well settled
> as to constitute a custom or usage with the force of law; (3) the decisions
> of employees with final policymaking authority; (4) the ratification by such
> final policymakers of the decisions—and the basis for them—of
> subordinates to whom authority was delegated subject to these
> policymakers' review and approval; or (5) the failure to adequately train or
> supervise employees, so long as that failure results from 'deliberate
> indifference' to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

To establish municipal liability on the basis of a custom or practice, a plaintiff

must show: (1) the existence of a continuing, persistent, and widespread practice of

unconstitutional misconduct by the municipality's employees; (2) deliberate indifference

to or tacit approval of such misconduct by the municipality's policymaking officials after

notice to the officials of that particular misconduct; and (3) that the plaintiff was injured

by virtue of the unconstitutional acts pursuant to the custom and that custom was the

moving force behind the unconstitutional acts. *Gates v. Unified Sch. Dist. No. 449*, 996

F.2d 1035, 1041 (10th Cir. 1993). "In attempting to prove the existence of such a

continuing, persistent and widespread custom, plaintiffs most commonly offer evidence

suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

Defendants argue that Plaintiff has failed to plausibly allege that the City of Colorado Springs has an informal custom and practice of arresting individuals without probable cause. *See* (Doc. # 48 at 12–15.) The Court agrees with Defendants.

In her Amended Complaint, Plaintiff alleges generally that Defendant City of Colorado Springs has a widespread practice of making arrests without probable cause. To support her claim, Plaintiff provides six examples of instances where Colorado Springs police allegedly wrongfully arrested individuals in 2009 and 2012.[2] *See* (Doc. # 47 at ¶¶ 57–62.) The Court finds that Plaintiff's allegations are largely conclusory and have little in common with the circumstances of Plaintiff's arrest. For example, three of the instances involved individuals that police had misidentified as suspects for various crimes, including a homicide, a drug offense, and an armed robbery. (*Id.* at ¶¶ 57, 61, 62.) Another case involved the police arresting an individual for carrying a holstered pistol at a festival after a law prohibiting guns in parks had been repealed. (*Id.* at ¶ 59.) None of the instances cited by Plaintiff involved an individual arrested without probable cause for failure to desist or disperse. Accordingly, Plaintiff has failed to show that "similarly situated individuals were mistreated by the municipality in a similar way." *Carney*, 534 F.3d at 1274.

---

[2] Plaintiff also provides four examples of instances where Colorado Springs police allegedly retaliated against individuals for exercising their First Amendment rights, such as filming police misconduct or filing open records requests. *See* (Doc. # 47 at ¶¶ 51–54.) The Court declines to consider these allegations because Plaintiff does not assert any First Amendment or First Amendment retaliation claims.

Because Plaintiff's allegations fail to demonstrate that there was a widespread practice or custom "so permanent and well settled as to constitute a 'custom or usage' with the force of law," *Monell*, 436 U.S. at 691, the Court agrees with Defendants that Plaintiff's municipal liability claims against the City of Colorado Springs must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss First Amended Complaint and Jury Demand (Doc. # 48.) The Motion is GRANTED with respect to Plaintiff's second claim for relief against Defendant Inazu and Plaintiff's municipal liability claims against Defendant City of Colorado Springs. The Motion is DENIED with respect to Plaintiff's claims against Defendants Pryor and McCafferty and Plaintiff's third claim for relief against Defendant Inazu. It is

FURTHER ORDERED that Plaintiff's second claim for relief against Defendant Inazu is DISMISSED WITH PREJUDICE for failure to allege personal participation. It is

FURTHER ORDERED that Plaintiff's claims against Defendant City of Colorado Springs are DISMISSED WITH PREJUDICE for failure to state a claim.[3]

DATED: January 13, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

---

[3] The Court observes that Plaintiff has already amended her Complaint once. (Doc. # 47.) Further, Plaintiff is represented by counsel and was on notice of the deficiencies of her municipal liability claims and second claim for relief against Defendant Inazu from Judge Tafoya's prior Recommendation. *See* (Doc. # 35.) Accordingly, the Court concludes that dismissal with prejudice of these claims is appropriate. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999) ("Although leave to amend should be liberally granted, a trial court is not required to sua sponte grant leave to amend prior to making its decision [to dismiss].").