IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 20-cv-00457-CMA-MDB

SASHA CRONICK,

    Plaintiff,

v.

CHRISTOPHER PRYOR,
ROBERT MCCAFFERTY,
DANIEL LAMBERT, and
MICHAEL INAZU,

    Defendants.

---

## ORDER AFFIRMING IN PART AND REJECTING IN PART THE RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter is before the Court on the October 10, 2023 Report and Recommendation of United States Magistrate Judge (Doc. # 118) ("Recommendation"). The Recommendation concerns a Motion for Sanctions (Doc. # 95) filed by Defendants—the three Colorado Springs police officers remaining in this case.[1] Plaintiff Sarah Cronick timely objected to the Recommendation; Defendants responded. (Docs. ## 120–121.) For the following reasons, the Court affirms the Recommendation in part and rejects it in part.

---

[1] Magistrate Judge Dominguez Braswell issued the decision as a Recommendation rather than an order because it implicates jury instructions. (Doc. # 118 at 2 n.2.)

## I.     BACKGROUND

This is a civil rights case arising under 42 U.S.C. § 1983 involving a heated exchange between Ms. Cronick and Defendants—all Colorado Springs police officers responding to an emergency. (Doc. # 118 at 2–3.) Magistrate Judge Dominguez Braswell's Recommendation extensively recites the facts of this case, and this Court incorporates that portion of her Recommendation herein. *Id.* at 2–4; *accord* Fed. R. Civ. P. 72(b)(3). Consequently, below, the Court reiterates only the facts necessary to address Ms. Cronick's objections.

### A.     THE DISCOVERY DISPUTE

On January 25, 2023, at an informal discovery conference, the parties advised the magistrate judge of a dispute over Ms. Cronick's social media accounts. (Doc. # 78.) Per the parties, Ms. Cronick posted content on YouTube that is relevant to this case— video clips of Ms. Cronick's altercation with Defendants and clips she recorded at other police encounters. *E.g.,* (Doc. # 118 at 4–5); (Doc. # 117-1 at 2) (referring to recordings of unrelated police encounters as "auditing videos"). The dispute formed over Defendants' ongoing efforts to obtain those YouTube clips, other users' comments on those clips, and documentation of whatever profit Ms. Cronick made from posting those clips. *Id.* After hearing from both sides, the magistrate judge found that evidence relevant and ordered Ms. Cronick to produce it. (Doc. # 118 at 5 (citing Doc. # 78).)

On April 10, 2023, the parties notified the magistrate judge that their discovery dispute persisted, which prompted the setting of an April 24 status conference. (Doc. # 118 at 5); (Doc. # 85.) At that conference, Ms. Cronick debuted a new argument—that she lacks control over the YouTube account needed to access the requested discovery.

2

(Doc. # 85 at 2.) The magistrate judge rejected Ms. Cronick's new argument and granted Defendants leave to move for discovery sanctions. *Id.*

On June 20, 2023, Defendants moved for sanctions. (Doc. # 95.) Attached to their motion, Defendants included videos that Ms. Cronick never produced along with evidence suggesting that Ms. Cronick made money by posting some sort of content on social media. (Doc. # 118 at 6 (citing Docs. ## 95-6, 95-7, 95-8, 95-9, 95-10, 95-11, 95-12).) They also attached documents showing that no social media platforms will divulge Ms. Cronick's content, which includes other users' comments on her content, without the account holder's consent. *E.g.*, (Doc. # 95-4); *see also* (Doc. # 95-5 at 4–5) (stating that any videos Ms. Cronick archived would be publicly inaccessible but remain privately available to her).

**B.      THE MAGISTRATE JUDGE'S RECOMMENDATION**

The Recommendation first clarified the three categories of information at issue: (1) social media content (a) capturing or concerning Ms. Cronick's encounter with Defendants and (b) recording her unrelated police encounters, (2) documents and related information on whether Ms. Cronick profited from posting such content on social media, and (3) a now-deleted message thread between Ms. Cronick and "Julie," an individual who represented herself as the person who experienced the medical emergency to which Defendants responded. (Doc. # 118 at 9.)

Next, the Recommendation reiterated prior rulings on discovery, which are as follows:

- Social media usage and derivative income are relevant, (Docs. ## 78, 85);
- Ms. Cronick must produce both, (Doc. # 78);

3

- Ms. Cronick **does** possess or control her YouTube account, (Doc. # 85).

(Doc. # 118 at 10.)

The Recommendation ultimately endorsed sanctions against Ms. Cronick (and her counsel) for two reasons. First, it reasoned that the prior discovery orders trump Ms. Cronick's relevance arguments, and the continued withholding of her YouTube content and derivative income records substantially prejudices Defendants. (Doc. # 118 at 10–14 (inferring from Ms. Cronick's inexplicable position that the discovery must hurt her case).) As for the deleted conversation with "Julie," the Recommendation concluded that Ms. Cronick should have known not to delete those messages yet did so anyway, which prejudices Defendants because the messages concern Ms. Cronick's conduct before arrest—information key to Defendants' defense against Ms. Cronick's false arrest claim. *Id.* at 14–15.

Having found Rule 37 violations, the Recommendation suggested the following adverse factual inferences:

> "1. Plaintiff regularly records police officers, and those recordings demonstrate that Plaintiff engages in behavior that is disruptive to police business.
>
> 2. Plaintiff profits from these recordings by posting them on social media and engaging with others about those posts.
>
> 3. Plaintiff has willfully deleted video evidence of the incident at issue in this litigation, with an intent to deprive Defendants of that evidence.
>
> 4. Plaintiff has willfully deleted comments and messages about the incident at issue in this litigation, with an intent to deprive Defendants of that evidence."

*Id.* at 17–18 (citing Fed. R. Civ. P. 37(b)). The Recommendation also endorsed monetary sanctions. *Id.* at 17 (awarding Defendants the costs and fees incurred in this discovery dispute).

## II.   LEGAL STANDARDS

### A.   REVIEW OF A MAGISTRATE JUDGE'S RECOMMENDATION

Under 28 U.S.C. § 636(a)(1)(B), this Court may designate a magistrate judge to consider dispositive motions and submit recommendations to the Court. When a magistrate judge submits a recommendation, the Court must "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

## III.   DISCUSSION

Ms. Cronick lodges three objections to the Recommendation. The Court considers each in turn.

### A. Adverse Factual Inferences

Ms. Cronick first objects to the imposition of an adverse factual inference—namely, that she regularly records police interactions and routinely disrupts police business while doing so. (Doc. # 120 at 3–4.) She argues that the magistrate judge committed clear legal error by recommending the inference under Rule 37(b) without explicitly finding that Ms. Cronick withheld that evidence "in bad faith" or holding an evidentiary

5

hearing first. *Id.* She does not challenge the other four adverse factual inferences, and she admits that she deleted the messages with "Julie." (Doc. # 118 at 9.)

1. <u>Legal Standard under Rule 37(b)</u>

Rule 37(b) governs the failure to obey a prior discovery order. *See* Fed. R. Civ. P. 37(b)(2). A Rule 37(b) violation occurs when (1) a prior discovery order was issued, and (2) a party or witness failed "to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2). To remedy violations, the Rule suggests an array of possible sanctions. However, because the chosen punishment should be no harsher than necessary to remedy the discovery violation and deter future offenses, the court's discretion to choose among sanctions varies. *E.g.*, *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 104 (D. Colo. 1996). When the offending party disobeys a discovery order willfully or purposefully, stricter sanctions become appropriate. *E.g.*, *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997); *see generally 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 988 (10th Cir. 2006).

2. <u>Analysis</u>

   a. *Adverse Factual Inference Sanctions Require Finding Bad Faith or Willfulness*

Longstanding Tenth Circuit precedent requires finding bad faith or willfulness before imposing adverse evidentiary inferences. *E.g.*, *EEOC v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 965–66 (10th Cir. 2017); *accord Aramburu*, 112 F.3d at 1407 (summarizing precedent). As explained by the *EEOC* Court, adverse factual inferences rest on a key premise: because a party withheld discovery in bad faith, the withholding party's scienter strongly suggests that said evidence is unfavorable. *JetStream*, 878 F.3d at 966 (internal citation omitted). "[N]egligent or even grossly negligent behavior"

6

cannot suffice because it does not imply the same nefarious intent that justifies the policy goals of an adverse factual inference. *Id.* (noting the risk of "tip[ping] the balance at trial in ways the lost information never would have" (internal quotation and citation omitted)).

The Recommendation, however, mentioned none of this longstanding precedent. Instead, the Recommendation concluded that bad faith or willfulness need only be shown when imposing default or dismissal by citing Rule 37(b) itself and one unreported case from the Western District of Oklahoma. (Doc. # 118 at 14 (citing *Markham v. Nat'l States Ins. Co.*, No. Civ. 02-1606, 2004 WL 3019308, at *11–12 (W.D. Okla. 2004).) However, neither *Markham* nor the three legal authorities on which *Markham* relies support the proposition that a court may order an adverse factual inference without finding willfulness or bad faith. *Markham*, 2004 WL 3019308, at *12 (first citing *Creative Gifts, Inc. v. UFO*, 325 F.3d 540, 549 (10th Cir. 2000), then citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992), then citing 7 Daniel Coquillette et al., *Moore's Federal Practice - Civil*, § 37.50[1] (Matthew Bender 3d ed.)). Neither *Creative Gifts* nor *Ehrenhaus* so much as mentioned the degree to which intent must be considered before imposing an adverse factual inference. *Creative Gifts*, 235 F.3d at 549; *Ehrenhaus*, 965 F.2d at 920. Nor did either case involve the imposition of an adverse factual inference—the sanction chosen in *Creative Gifts* was the striking of counterclaims, and the sanction imposed in *Ehrenhaus* was dismissal with prejudice. *Creative Gifts*, 235 F.3d at 549; *Ehrenhaus*, 965 F.2d at 920. Even the treatise section cited in *Markham* discusses willfulness or bad faith only as a prerequisite to default or dismissal—not adverse factual inferences. Coquillette et al., *supra*, § 37.50[1]. Ms.

7

Cronick is correct—imposing an adverse factual inference requires a finding of bad faith.

### b.  The Written Record Shows Ms. Cronick's Willful Disobedience

Legal error notwithstanding, Ms. Cronick's objection does not excuse her continued disregard for Judge Dominguez Braswell's discovery orders. Although the Recommendation did not find willfulness or bad faith, this Court is "convinced[ ] from the totality of the circumstances presented by the written record" that Ms. Cronick's inexplicable failure to produce the relevant social media content amounts to a willful violation of Rule 37(b). *Markham*, 2004 WL 3019308, at *11. The record establishes that the magistrate judge's discovery orders were clear, Ms. Cronick had no reason to misunderstand them, and nothing beyond Ms. Cronick's control explains her continued noncompliance. Ms. Cronick's inexplicably nonsensical reasons strongly suggest purposeful obstruction. (Doc. # 118 at 10–12) (noting that Ms. Cronick insists that her husband exclusively controls her YouTube account, but her husband states the opposite, and Ms. Cronick offers no explanation for why she cannot simply obtain access from her husband); *see also* (Doc. # 85 at 2) (admitting that Ms. Cronick remains married and in communication with her husband). Ms. Cronick's inconsistent reasoning exemplifies the types of evasive maneuvers taken precisely to avoid disclosure. The Court therefore affirms Judge Dominguez Braswell's findings with respect to Rule 37(b) and the appropriateness of an adverse factual inference.

However, rather than adopt the inferences provided in the Recommendation, the Court elects not to commit to an instruction in advance of hearing the actual evidence presented and admitted at trial. *See Genova v. Banner Health*, Civ. No. 11-cv-01139-

RBJ-MJW, 2012 WL 2340122, at *4 (D. Colo. June 7, 2012) (unreported). The evidence before the Court does not clarify the extent of Defendants' prejudice, but witness testimony will. With the added context provided at trial, the Court can narrowly tailor the contents of the adverse factual inference such that it accomplishes Rule 37(b)'s normative goals without unduly tipping the scales.

**B.  Monetary Sanctions Against Ms. Cronick and her Counsel**

Ms. Cronick next objects to the imposition of Rule 37(b) monetary sanctions. Of her two objections, only one requires discussion;[2] she argues that monetary sanctions cannot be imposed on her without Judge Dominguez Braswell holding a hearing on her indigency. (Doc. # 120 at 5–7.)

1. <u>Legal Standard</u>

Under Rule 37(b), the court "must" impose monetary sanctions on a disobedient party, its counsel, or both to reimburse the moving party for its costs and fees. Fed. R. Civ. P. 37(b)(2)(C). To avoid expenses, the disobedient party bears the burden of showing that its failure to obey was "justified or that special circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2), Advisory Committee Notes (1970 Amendment).

---

[2] Ms. Cronick separately contends that monetary sanctions cannot be imposed on her attorney without the magistrate judge finding that her attorneys themselves "advis[ed]" any sanctionable conduct. (Doc. # 120 at 7–10.) But as Defendants correctly note, Ms. Cronick erroneously cites to Rule 37(a), which explicitly applies only to an attorney "advising" the conduct that constituted a Rule 37(a) violation. But the Recommendation invokes Rule 37(b), which has no such limitation. Consequently, the Court overrules Ms. Cronick's objection.

2. <u>Analysis</u>

The Recommendation ordered Ms. Cronick and her counsel to pay Defendants' fees and costs associated with this discovery dispute. (Doc. # 118 at 17.) The Court concurs for two reasons.

First, Ms. Cronick failed to make either of the showings mentioned in Rule 37(b)—namely, that her indigency makes a monetary sanction unjust or that some special circumstance warrants leniency. (Doc. # 120 at 4–5) (offering no evidence besides referencing a bout of homelessness she experienced almost four years ago); (Doc. # 116) (making not one reference to her indigent status let alone supporting it with evidence). To the extent she insists that a hearing is required, Ms. Cronick mistakes the procedural requirements of Rule 37(b) for that of Rule 37(a). Only Rule 37(a) explicitly requires "an opportunity to be heard" before imposing monetary sanctions. *Cf.* Fed. R. Civ. P. 37(a)(5)(A). Second, Ms. Cronick cites no authority requiring consideration of her ability to pay before imposing monetary sanctions under Rule 37(b). For example, she relies heavily on *United States v. Akers*—a case remanded by the Tenth Circuit because the district court failed to explicitly consider the *Farmer* factors necessary to create a sufficient record for appellate review. *United States v. Akers*, 76 F.4th 982, 992–93 (10th Cir. 2023); *accord Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1259 (10th Cir. 2015). There, unlike here, the district court invoked its inherent powers[3]

---

[3] A federal court's inherent powers include the discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). Said power "can be invoked even if procedural rules exist which sanction the same conduct," although a federal court must nevertheless exercise caution before deciding to utilize inherent powers, particularly when "individual rules address specific problems." *Id.* at 49 n.14.

to punish misconduct through a monetary sanction amount predetermined by a previous order. *Id.* at 987. Here, by contrast, the Recommendation invokes Rule 37(b), which awards to-be-determined costs and fees to reimburse a prejudiced party for the unnecessary litigation created by the violator's obstruction. (Doc. # 118 at 17.) Indeed, the Recommendation did not even quantify the monetary sanction—it only determined that one is appropriate. *Id.* Moreover, unlike *Akers*, the sanction amount depends on what Defendants claim along with the supporting documentation they provide. So, Ms. Cronick's objection is, at best, premature. This Court will consider her indigency as part of the "lodestar" analysis that follows once Defendants submit their application as detailed below. *See, e.g.*, *Stocks v. Crowfoot*, No. 18-cv-02334-CMA-MEH, 2021 WL 4149627, at *4 (D. Colo. Sept. 13, 2021) (unreported); *accord Farmer*, 791 F.3d at 1259.

## IV.   CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Ms. Cronick's Objection to Magistrate Judge's Recommendation of Sanctions (Doc. # 120) is GRANTED IN PART and OVERRULED IN PART.
    - It is GRANTED as to the contents of the adverse factual inference to be tendered in jury instructions;
    - It is OVERRULED in all other respects;
- The Recommendation (Doc. # 118) is ADOPTED as an order of this Court in all other respects.
- IT IS FURTHER ORDERED that Defendants will submit an application for their reasonable attorneys' fees and costs associated with the filing of their Motion for

Sanctions (Doc. # 95) no later than January 17, 2024, to which Ms. Cronick will have an opportunity to respond no later than January 31, 2024.

DATED: January 4, 2024

                BY THE COURT:

                _____
                CHRISTINE M. ARGUELLO
                Senior United States District Judge