IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 20-cv-00457-CMA-MDB

SASHA CRONICK,

    Plaintiff,

v.

CHRISTOPHER PRYOR, and
ROBERT MCCAFFERTY,

    Defendants.

---

**ORDER RESERVING RULING ON APPLICATION FOR ATTORNEY'S FEES**

---

This matter is before the Court on (former) Defendants Christopher Pryor and Robert McCafferty's Application for Attorney's Fees and Costs. (Doc. # 123.) For the reasons provided below, the Court RESERVES RULING on the Application but grants Defendants leave to re-file Exhibit B in accordance with the instructions set forth below.

### I.    BACKGROUND

This 42 U.S.C. § 1983 case arises from an altercation between Plaintiff Sarah Cronick and several police officers employed by Defendant, the City of Colorado Springs. (Doc. # 118 at 2–3.) The instant motion, however, has nothing to do with the substantive facts of that altercation. Rather, the instant motion arises from a discovery dispute over Ms. Cronick and her attorneys' ongoing refusal to divulge information from Ms. Cronick's YouTube account. *See generally* (Doc. # 122.) As detailed in this Court's

previous Order (and reiterated below), Ms. Cronick and her attorneys continue to rely on a fabricated excuse to justify disobeying a lawful discovery order, which ultimately led to this Court's January 4, 2024 Order imposing monetary sanctions on both Ms. Cronick and her counsel. *Id.*

For context, Defendants sought YouTube material accessible only with the account holder's consent. *See id.* at 4. At first, Ms. Cronick and her counsel withheld that information, claiming it was not relevant. This objection led Defendants to request an informal status conference in January 2023 before United States Magistrate Judge Maritza Dominguez Braswell, who rejected that argument and ordered production. *E.g.*, (Doc. # 118 at 5.) By April 2023, Ms. Cronick still had not turned over the discoverable information, so Defendants requested another status conference. At the status conference, Ms. Cronick and her attorneys argued that compliance with the order was impossible because Ms. Cronick's husband had **exclusive** access to the YouTube account. *Id.* at 5. However, after "explor[ing] the issue during the conference," the Magistrate Judge rejected Ms. Cronick's explanation, finding that she had "either direct or indirect control" over the YouTube accounts. *Id.* Critically, the Magistrate Judge noted that not only did Mr. Cronick's deposition testimony directly contradict Ms. Cronick—according to him, **she in fact controlled the YouTube account**—but her excuse, even if assumed true, neglected to explain what stopped her from obtaining the YouTube login information from her husband. *Id.* at 11.

On June 20, 2023, Defendants filed a motion under Fed. R. Civ. P. 37(b) requesting the imposition of monetary sanctions on Ms. Cronick and her attorneys.

2

(Doc. # 95.) The Magistrate Judge recommended that this Court grant that motion (Doc. # 118 at 17–18) and, although Ms. Cronick objected, this Court overruled those objections because the sheer inadequacy of Ms. Cronick's explanation led this Court to conclude that Ms. Cronick and her attorneys ***knowingly*** disobeyed the Magistrate Judge's discovery order. (Doc. # 122 at 8–9 ("The Written Record Shows Ms. Cronick's Willful Disobedience").) This Court found that scienter was the only explanation. *Id.* at 8–11.

Accordingly, on January 18, 2024, Defendants filed an application seeking their attorney's fees and costs associated with this discovery dispute. (Doc. # 123.) To prove how many hours they spent on this matter and that the time spent was reasonable, Defendants' application included a table of contemporaneously logged hours along with redacted descriptions of each time entry. (Doc. # 123-2.)

On February 23, 2024, Ms. Cronick filed two objections to Defendants' application. (Doc. # 128.) First, she argued that this Court's Order imposing sanctions unconstitutionally denied her counsel his right to due process. *Id.* at 2–6. Second, she contended that Defendants' timetable is too redacted for this Court to ascertain whether the time spent was reasonable. *Id.* at 6–8.

## II.     APPLICABLE LAW

To calculate an attorney fee award, the court must determine the lodestar amount, which is "the number of hours reasonably expended on the matter, multiplied by a reasonably hourly rate." *Stenson v. Edmons*, 86 F.4th 870, 878 (10th Cir. 2023). The lodestar calculation produces a "presumptively reasonable fee." *Id.* (quotation

3

omitted). The party requesting fees has the burden of persuading the court that the hours expended and the hourly rate are both reasonable. *Malloy*, 73 F.3d at 1018. In doing so, the party must carry its burden by "submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested ***and how those hours were allotted to specific tasks***." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (emphasis added) (citing *Ramos*, 713 F.2d at 553).

To determine the lodestar amount, the Court follows a three-step process. *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), *overruled on other grounds by Penn. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987). The first step is to determine the number of hours reasonably spent by the prevailing party's counsel. *Id.* at 553; *see also Malloy v. Monahan*, 73 F.3d 1012, 1017 (10th Cir. 1996).[1] "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*,

---

[1] Courts have considered the following non-exhaustive list of factors in the lodestar calculus:

> (1) Whether the tasks being billed 'would normally be billed to a paying client,' (2) the number of hours spent on each task, (3) 'the complexity of the case,' (4) 'the number of reasonable strategies pursued,' (5) 'the responses necessitated by the maneuvering of the other side' and (6) 'potential duplication of services' by multiple lawyers.

*Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir.1998) (quoting *Ramos*, 713 F.2d at 554); *see also Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs of Boulder Cnty.*, No. 06-cv-00554, 2010 WL 3703224, at *2 (D. Colo. Sept. 13, 2010) (unpublished) (considering (1) whether the amount of time devoted to a particular task appears reasonable in light of the case's complexity, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, indicating how much time was allotted to specific tasks).

461 U.S. 424, 434 (1983). Second, the court must determine a reasonable hourly rate of compensation. *Ramos*, 713 F.2d at 555. "A reasonable rate is the prevailing market rate in the relevant community." *Malloy*, 73 F.3d at 1018 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Third, the court must multiply the number of hours reasonably expended by the reasonable hourly rate, which yields the lodestar amount. *Hensley*, 461 U.S. at 433.

In addition to determining the lodestar amount, the court must also "provide a concise but clear explanation" of the reasons underlying the fee award. *Eckerhart*, 461 U.S. at 437. The explanation must be enough to provide adequate basis for appellate review. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986).

### III. ANALYSIS

As explained below, the Court rejects Plaintiff's due process arguments because they are wholly without merit—built on inapposite case law and a flawed recollection of this case, directly contradicted by the record. However, despite the frivolity of Ms. Cronick's due process argument, the Court agrees that it cannot yet quantify the costs and fees to which Defendants are entitled let alone apportion them between Ms. Cronick and her counsel because Defendants' appended timesheet is too heavily redacted to allow this Court to assess whether it is reasonable. For that reason, the Court reserves ruling on Defendants' application and grants Defendants leave to re-file Exhibit B.

**A.     THE RULE 37(b) SANCTIONS WILL NOT BE DISTURBED**

Ms. Cronick and her counsel effectively urge this Court to revisit its imposition of fee sanctions by disguising a motion for reconsideration as a response to Defendants' Application. They raise three due process arguments: (1) this Court failed to find bad faith on the part of counsel and needed to do so before imposing sanctions, (2) Ms. Cronick's counsel received inadequate notice before being personally sanctioned and (3) Ms. Cronick's counsel was entitled to an opportunity to respond before being sanctioned. *See generally* (Doc. # 128.)

    1.    <u>The Sanctions Rest on Adequate Findings</u>

Ms. Cronick's counsel claims that this Court **must** find bad faith directly on his part before directly sanctioning him. *See* (Doc. # 128 at 3–5 (citing *Martin v. SGT, Inc.*, No. 2:19-cv-00289, 2023 WL 3585326, at *7 n.84 (D. Utah May 22, 2023)).) For support, he cites *Martin v. SGT, Inc.*, which itself relies on three cases for the notion that Rule 37(b)(2)(C) fee sanctions require evidence that either (A) "counsel is *solely* responsible for the violation of a discovery order" or (B) "counsel has a high degree of culpability relative to the disobedient party." *See id.* at *7 (emphasis added) (first citing *Naviant Marketing Sols., Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 185 (3rd Cir. 2003); then citing *Bolger v. Dist. of Columbia*, 248 F.R.D. 339, 346–47 (D.D.C. 2008); and then citing *1ST Tech., LLC v. Rational Enterprises Ltda*, No. 2:06-cv-01110, 2008 WL 4571057, at *9–10 (D. Nev. July 29, 2008)). However, *Martin* does not lend counsel's position any material support, and scrutinizing the three cases on which *Martin* relies reveals why.

*Martin* first cites *Naviant Marketing Solutions*, in which the Third Circuit—without any analysis or citation to authority—injected a narrowing term into Rule 37 that is nowhere to be found in the text of the rule: that an attorney "may only be sanctioned for **personally** violating a discovery order or for advising a client to do so." *Naviant*, 339 F.3d at 185 (emphasis added). Using this inexplicably narrower version of Rule 37, the *Naviant* Court invalidated a trial court's sanction order because the trial court made no findings about defense counsel's behavior or the specific discovery deficiencies that justified sanctions. *See id.* at 185–86. Notwithstanding the notable distinction in this case—that this Court already identified the specific discovery deficiencies that warranted sanctions—it is also worth noting that this Court already determined that Ms. Cronick—by and through her counsel—asserted excuses that are so clearly toothless, the only sensible explanation is bad faith on the part of the client-counsel duo.

As for the other two cases cited by *Martin*—*Bolger v. District of Columbia* and *1ST Tech*—both are inapposite for the same reason. Both cases cited *Naviant*'s unduly narrowed version of Rule 37 without conducting any meaningful analysis or checking to confirm whether the *Naviant* Court's legal interpretation was even remotely correct. *Cf. Bolger*, 248 F.R.D. at 346; *1ST Tech.*, 2008 WL 4571057, at *9. The same flaw that invalidates *Naviant* thus corrupts both *Bolger* and *1ST Tech*. Therefore, neither *Bolger* nor *1ST Tech* offer *Martin* any actual support. By extension, *Martin* fails to substantiate Ms. Cronick's contorted interpretation of Rule 37(b).[2]

---

[2] The lack of legal support is unsurprising given that other courts have reached contradictory conclusions by relying on the text of Rule 37 and its Advisory Committee Notes. For example, in a case that Plaintiff's counsel touts as authoritative, discussed *supra*, the Eleventh Circuit

However, counsel has inspired this Court to *sua sponte* clarify its previous Order. To be clear, the finding below is not a prerequisite to Rule 37(b) fee sanctions. It is, instead, this Court's expression of disapproval for dilatory and obviously futile legal arguments such as those made in the Response.

Ms. Cronick's attorneys, like all attorneys appearing before this Court, have an "obligation to assure that the client complies with discovery obligations and court orders." *Nelson*, 800 F.3d at 1229 (internal citation and quotations omitted). They also have a separate duty of candor to this Court. (Doc. # 122); *see generally* Colo. R. Prof. Cond. 3.3(a)(1) ("A lawyer shall not knowingly . . . fail to correct a false statement of material fact . . . . A lawyer may refuse to offer evidence . . . that the lawyer reasonably believes is false."). While bound by those obligations, counsel defended both of Ms. Cronick's depositions, wherein she asserted reasons preventing her from accessing her own YouTube account that were directly contradicted and internally incomprehensible. Despite those objective indicia of deception, counsel later asserted the same clearly contradicted factual assertions to the Magistrate Judge on Ms. Cronick's behalf; and, in briefs submitted to this Court, counsel doubled down on Ms. Cronick's deceptive excuse. To the extent that this Court's previous finding of bad faith was not made clear enough with respect to Ms. Cronick's attorneys themselves, the Court will make that

---

expressly rejected the idea that a Rule 37 fee sanction awarded against an attorney requires "prov[ing] the involvement of an attorney in a particular discovery conduct" because it would force a "mini-trial in order to prove the [attorney's] involvement," and a "mini-trial" would pose problems by "set[ting] as adversaries an attorney and a client who had already demonstrated substantial skill at obfuscation and delay." *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1161 (11th Cir. 1993).

finding clear now. The Court finds that Ms. Cronick's attorneys, Mr. David Lane and Ms. Reid Allison, are enabling and facilitating Ms. Cronick's ongoing disobedience of a lawful discovery order by giving life to an obvious lie. In doing so, both Mr. Lane and Ms. Allison are participating in the discovery process in this case in bad faith.

2. Due Process Rights Under Rule 37(b)

The Court next turns to counsel's due process arguments. Because counsel's position materially relies on erroneous conflations between Rule 37(b) jurisprudence and cases involving other sorts of sanctions issued via separate and distinct sources of sanctioning authority, this Court must start by clarifying the applicable law.

Rule 37(b) provides two textual limits on a court's authority to impose sanctions. First, Rule37(b)(2) cabins the court's discretion by permitting only punishments that are "just." Fed. R. Civ. P. 37(b)(2)(A); *see also Ins. Corp. of Ir., Ltd. v. Campagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (interpreting Rule 37(b)'s requirement of a "just" sanction as a "general due process restriction[ ] on the court's discretion" over the magnitude of punishment imposed). Second, Rule 37(b) prevents a court from sanctioning a party that can satisfactorily show substantial justification or "other circumstances mak[ing] an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Outside of those two limits, most courts read into Rule 37(b) a requirement of some notice and some sort of opportunity to be heard before fee sanctions may be imposed on a party or the party's attorney(s). Typically—at least, based on the cases cited by Plaintiff's counsel—those notice requirements are routinely satisfied by filing a motion for sanctions that names the party to be sanctioned—even if the attorney for that

9

party is not named in the motion. *See Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1160 (11th Cir. 1993) (upholding fee sanction against attorney because notice came from a motion for sanctions; such motions, when naming a party as the target, sufficiently place that party's counsel on notice of potential personal liability for actions mentioned in the motions); *see generally Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1230 (10th Cir. 2015) ("An opportunity to be heard does not require an oral or evidentiary hearing on the issue; the opportunity to fully brief the issue is sufficient to satisfy due process requirements." (quotation omitted)).[3] Alternatively, Rule 37(b)'s implied notice requirements can be satisfied by a court's prior order explicitly warning of the possibility of sanctions. *E.g.*, *Palmer v. Simon's Agency, Inc.*, 6:19-CV-114, 2020 WL 2129264, at *5 (N.D.N.Y. May 5, 2020).

Turning to the instant case, Ms. Cronick's attorneys insist that their fee sanctions are constitutionally deficient because Rule 37(b) demands more notice than what this Court provided. *See* (Doc. # 128 at 2). However, they are mistaken. The Court read every case Ms. Cronick cited and is left to conclude that counsel was led astray by their failure to distinguish the different types of sanctioning authority. Most of the cases they cited involve sanctions imposed under a materially distinct source of authority—a court's

---

[3] The *Devaney* Court concluded that a motion seeking sanctions need not name the party's attorney specifically, and this Court agrees. The *Devaney* Court found that the **purpose** of Rule 37 is "encourag[ing] the use of sanctions" and, mindful of that normative goal, reasoned that "[r]equiring the court to conduct a mini-trial in order to prove the involvement of an attorney in particular discovery conduct," would "only discourage the court from ordering sanctions." 989 F.2d at 1161.

inherent contempt powers—which invokes different due process considerations.[4] This Court's sanction invoked Rule 37(b) and not the Court's inherent powers. Thus, cases discussing the procedural prerequisites to exercising inherent contempt powers are flatly unpersuasive when considering a Rule 37(b) sanction imposing costs and fees.

For a particularly poignant example of inapposite case law, consider Ms. Cronick's citation for the dubious proposition that "Rule 37 fines are effectively a criminal contempt sanction." (Doc. # 128 at 4 (citing *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 42 (4th Cir. 1995).) *Hathcock* supported its legal assertion by citing only one case. *Hathcock*, 53 F.3d at 42 (citing *Buffington v. Baltimore Cnty., Md.*, 913 F.2d 113, 134 (1990)). However, the panel misinterpreted the technical holding of its own precedent, which makes the *Hathcock* Court's reliance on *Buffington* misplaced. *Buffington* did not assert that Rule 37(b) sanctions are simply akin to a criminal contempt sanction. To the contrary, *Buffington* stated that fee sanction orders are **not** akin to criminal contempt sanctions when they are "payable to the complaining adverse party, and the amount is determined by losses flowing from expenses incurred as a result of the [discovery] violation." *Buffington*, 913 F.2d at 134 (citing Fed. R. Civ. P. 37(b)(2)). *Hathcock* ignored that important nuance, and so did Plaintiff's counsel.

---

[4] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991) (explaining the distinction); *Hall v. Cole*, 412 U.S. 1, 5 (1973) (analyzing a court's fee sanction imposed under inherent authority); *Kornfeld v. Kornfeld*, 393 F. App'x 575, 577 (10th Cir. 2010) (noting that the district court's fee award was properly rooted in the court's inherent power); *Morris by Rector v. Peterson*, 871 F.2d 948, 951 (10th Cir. 1989) (same); *Palmer*, 2020 WL 2129264, at *4 (same). As *Chambers* noted, inherent powers can be invoked even when a procedural rule exists to sanction the same conduct, which means discerning the case's technical holding requires determining which authority was actually exercised as the basis for sanctions and which source of authority was upheld, if any, during appellate review. Plaintiff's counsel clearly did not do either of those things here.

Moreover, *Buffington* technical holding has no precedent-setting impact on Rule 37(b). *Buffington* involved a trial court that invoked Rule 37(b) **and**, alternatively, the court's **inherent contempt power**. On appeal, the *Buffington* Court **expressly** rejected the applicability of Rule 37(b), choosing instead to cabin its holding to the trial court's inherent contempt power. *See id.* at 132 n.15. Thus, the first domino falls: *Buffington* cannot stand for the proposition that Rule 37(b) is effectively a criminal contempt sanction; so *Hathcock* is incorrect, which means Plaintiff's counsel is equally incorrect.[5]

In sum, the cases relied upon by Ms. Cronick and her counsel do not support the assertion that heightened due process requirements must be met before such sanctions may be imposed.

3. <u>Plaintiff's Counsel Received Adequate Due Process</u>

Turning to the due process argument itself, this Court begins by reiterating four key moments in the timeline of this case:

(1) In January 2023, the Magistrate Judge held a discovery hearing about the YouTube information's discoverability and ordered production;

(2) In April 2023, due to continued obstruction, the Magistrate Judge held a status conference and, after considering and rejecting Ms. Cronick's unsatisfactory excuse, the Magistrate Judge granted Defendants leave to move for sanctions;

(3) In June 2023, Defendants filed a motion for sanctions that explicitly named Ms. Cronick and notified her (along with her attorneys) that they collectively faced potential liability for disobeying a discovery order;

---

[5] Were that not enough, *Hathcock* itself is also distinguishable. In *Hathcock*, the trial court *sua sponte* imposed a fee sanction directly on counsel **without the party seeking sanctions even requesting** a fee sanction. The sanction in the instant case was imposed as a result of Defendants' motion requesting Rule 37(b) sanctions with full notice and an opportunity to respond in writing provided to Ms. Cronick and her counsel.

    (4) In October 2023, Ms. Cronick formally responded to that motion for sanctions by filing a brief that doubled down on her fabricated excuse; and

    (5) In January 2024, this Court found Ms. Cronick's position incomprehensible and consequently imposed monetary Rule 37(b) sanctions on Ms. Cronick and her counsel.

*See* (Doc. # 122 at 2–3, 12.)

Despite counsel's personal involvement in these events, counsel inexplicably denies that he was ever "given notice that sanctions were being sought, why they were being sought, against whom they were being sought" and, incredibly, claims he was "given no opportunity to defend himself." (Doc. # 128 at 4 (citation omitted).)

    a.    *Counsel Received Adequate Notice*

Counsel was given notice that sanctions were being sought. The Magistrate Judge specifically discussed sanctions for obstructing discovery. (Doc. # 85 at 2.) Defendants' motion for sanctions named Ms. Cronick, specified which sanctions the motion requested, and expressly invoked the source of sanctioning authority. *See* (Doc. # 95 at 3–4, 8–9 (citing Rule 37(b)(2)(A)) (explicitly requesting sanctions that included attorney's fees and costs for discovery misconduct)). To the extent counsel objects to the fact that the motion did not name him specifically, this Court refers him to the cases **that he himself cited as authoritative**, which held that motions for sanctions and prior court orders provide adequate notice. *See Devaney*, 989 F.2d at 1160; *Palmer*, 2020 WL 2129264, at *5. Both cases are on point here. Not only did Defendants file a motion for sanctions against the Plaintiff, but also, the Magistrate Judge's Report and

13

Recommendation explicitly recommended sanctions against both "Plaintiff and Plaintiff's counsel." (Doc. # 95; Doc. # 118 at 17.)

Second, counsel received notice as to why said sanctions were being sought. The motion for sanctions straightforwardly and explicitly explained that Ms. Cronick's position was so thoroughly contradicted by the record that she must be lying to continue avoiding her discovery obligations. (Doc. # 95 at 6–8 (citing her husband's deposition where ***he contradicted her*** by "disclaim[ing] any ownership or interest" in the channel and citing YouTube videos posted by Ms. Cronick several months before the motion for sanctions was filed where Ms. Cronick recorded herself ***admitting that she owns the YouTube channel***.) Even before the motion was filed, the Magistrate Judge highlighted these concerns as reasons why she did not believe Ms. Cronick when she explored the issue during the status conference. (Doc. # 85 at 2.) Yet, counsel chose to persist with a clearly contradicted excuse despite multiple indications that failure to change course may result in sanctions.

        *b.*      *Counsel Had an Opportunity to Respond*

There can be no debate that Plaintiff's counsel had an adequate opportunity to respond. When the Magistrate Judge issued her Report and Recommendation, the parties had a statutorily protected opportunity to file written objections directed to this Court for review. (Doc. # 118 at 17); *see generally* 28 U.S.C. § 636(b)(1); *accord* Fed. R. Civ. P. 72(b). Plaintiff's counsel filed an objection that this Court reviewed and considered prior to issuing its previous Order. In other words, Plaintiff's counsel had an opportunity to be heard about the imposition of sanctions not just in general, but also on

14

him personally—as the recommendation explicitly warned him of potential personal liability. *See* (Doc. # 120.) Yet, counsel used that opportunity to reassert debunked excuses rather than defend himself. *See generally* (Doc. # 122 at 8–9.)

Counsel also insists that he was denied adequate due process because this Court declined to give Ms. Cronick an evidentiary hearing "to prove her inability to comply" with the discovery order. (Doc. # 128 at 5 (promising that, if allowed a hearing, Ms. Cronick "would produce evidence that she was unable to comply").)[6] At the outset, this Court declines to waste any more time on Ms. Cronick's twice-rejected excuses. Although she claims "no evidence adduced in any forum" was found to disprove her position, she wholly ignores her own husband's deposition and her own recorded statements on her YouTube channel that **both agree: it is her YouTube account**. *Id.* at 5; *but see* (Doc. # 85 at 2.) In light of these blatant contradictions in the record, "plainly framing th[e] contention betray[s] its infirmity." *Nelson*, 800 F.3d at 1229–30. Having considered the record sufficient to find bad faith, this Court was within its discretion not to order an evidentiary hearing. Again, for emphasis: "[a]n opportunity to be heard does not require an oral or evidentiary hearing on the issue; the opportunity to fully brief the issue is sufficient to satisfy due process requirements." *Id.* (quotation omitted).

In sum, this Court committed no legal error by awarding sanctions in this case. Counsel's insistence on revisiting this issue showcases the same obduracy that earned

---

[6] It is telling that counsel did not attempt to submit an offer of proof to buttress its noticeably vague promise of exonerating evidence.

the fee sanctions in the first place. Counsel's claim to have been deprived of notice or an opportunity to defend himself is simply false—clearly belied by CM/ECF and the very case law on which he relies.[7]

**B.     DEFENDANTS' REDACTED TIMESHEET IS INSUFFICIENTLY DETAILED**

Finally, the Court must ascertain the lodestar amount. The Court begins by attempting to determine the number of hours reasonably spent by Defendants. *Monahan*, 73 F.3d at 1017.

Although courts are discouraged from "achiev[ing] auditing perfection," the purpose of the lodestar calculus is doing "rough justice" to the prevailing party without awarding a windfall——which requires that the prevailing party prove the reasonableness of its fee request with sufficiently detailed billing entries. *Fox v. Vice*, 563 U.S. 826, 838 (2011); *see also Rocky Mountain Christian Church*, 2010 WL 3703224, at *2.

In the instant case, according to Defendants' contemporaneously recorded timesheet, Defendants spent exactly 60 hours working on this issue. (Doc. # 123 at 1–2; Doc. # 123-2.) However, 26.3 of those 60 hours were spent on "legal research" but, due to redaction, the timesheet provides no context as to the point of any of that research. *See* (Doc. # 123-2 at 1–5.) Ms. Cronick contends that these redactions alone make the

---

[7] The Court observes that the majority of Ms. Cronick's cited case law contradicted her cherry-picked quotations. Counsel is hereby put on notice that should he continue to waste this Court's time relitigating an issue already decided using cases that contradict the very contention for which they are being cited, **Ms. Cronick's counsel may be subject to sua sponte sanctions under this Court's inherent authority** to reimburse Defendants for the resources they would be committing to combatting vexatious and frivolous litigation tactics.

timesheet inadequate because the excessive redaction makes it impossible to determine how much of those 26.3 hours were reasonable, and the Court agrees. Defendants' heavy-handed redactions prevent this Court from meaningfully assessing whether at least one third of the hours requested are reasonable. Accepting Defendants' Application would amount to this Court taking Defendants' word for it that all the legal research they performed was relevant and efficiently conducted. That simply will not do—the lodestar calculus requires more detail.

For that reason, the Court reserves ruling on the amount to be awarded to Defendants on their Application. Leave is hereby granted to Defendants to refile Exhibit B with ***more detail and less redaction***.

## C. THE COURT REQUIRES A HEARING TO APPORTION FAULT

Although the Court's analysis above concludes that its imposition of sanctions was preceded by adequate due process and required no evidentiary hearing beforehand, the question of whether to impose sanctions is a separate matter from the issue of how to apportion those sanctions. The Court must now determine how to reasonably apportion fault between Ms. Cronick and her counsel. *See* (Doc. # 128 at 4); *Martin*, 2023 WL 3585326, at *6 n.79 ("If the fault lies with the attorneys, that is where the impact of the sanctions should be lodged. If the fault lies with the client, that is where the impact of the sanctions should be lodged."). However, at present, the Court lacks sufficient facts to conduct that calculus. Specifically, the Court lacks information on who is more responsible for the deceptive representations made to this Court and the Magistrate Judge. To determine who is more at fault for Ms. Cronick's flagrant

disregard for the discovery process—her or her counsel—the Court therefore sets an in-person hearing for **September 17, 2024, at 3:00 PM MDT**.

## IV.   CONCLUSION

For the foregoing reasons, it is ORDERED that RULING IS RESERVED on Defendants' Application for Attorney's Fees and Costs (Doc. # 123). Defendants are permitted leave to re-file Exhibit B to their application no later than September 3, 2024. Plaintiff may file any objections as to the reasonableness of the fees being sought by no later than September 10, 2024.[8]

It is FURTHER ORDERED that the parties (including Ms. Cronick herself) shall appear in-person before this Court on September 17, 2024, at 3:00 PM MDT for the purpose set forth in the previous section of this order.

DATED: August 30, 2024

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge

---

[8] Plaintiff's counsel should not take this as an invitation to relitigate the appropriateness of Rule 37(b) sanctions.